Whyte, Judge,
delivered the judgment of the court—
Haywood, Judge, dissenting. Permitting the heir, upon a scire facias against him, to contest the existence of the debt, is productive of no injury to the creditor, and is but an act of justice to the heir, in common cases the plaintiff must substantiate his claim or prove his debt Why? Because the law must see an injury before it awards a recompense — it must see a debt before it authorizes its payment; and how does the law see these? By the event of a litigation between the parties, conducted by prescribed rules, under the direction and superintendence of courts of justice, where each party has a full opportunity of alleging and proving the parts of his case. Now, does not the principle of this process, which the law allows in common cases, apply to the sei. fa. against the heirs under the Act oí Assembly? Is not he (the heir) a party to the suit? Is he not even an original party to the scire facias? Had he ever an opportunity of contesting the justice of the claim? Certainly not; for the argument, that the executor or administrator, (who is the representative of the testator,) contested this debt, is nothing to the purpose. Suppose the heir had attempted to interfere in the original suit against the executor, and oflered to mould, or alter, or add to the defence; what would the executor or administrator have replied? That lie was the representative of the testator, as to his personal estate — that by law it was under his management and control, and he was answerable for it — that the heir, had no power over it, had nothing to do with it, and was not in any wise accountable for it. Suppose that upon this rejection by the personal representative, the heir had applied to the court for leave to assist in the management of the .defence; what must have been the answer? That he was no party and could not be heard in the case. If then the heir could not be permitted to defend before the scire facias against him- does not reason *12 and justice say, that he shall have that privilege when he is proceeded against? They certainly do, and my opinion is that the law says so too.
There is no privity between the heir and the personal representative; — they are in law, strangers to each other, and the rule of law, founded on good sense and justice, says, that “res inter alios acta &c.” A verdict cannot be given in evidence by a stranger against one of the parties to the suit; and vice versa, one of the parties to a suit cannot give the verdict therein, in evidence against a stranger. Phillips’ Ev. 228. For, says the book, he had no opportunity to examine witnesses, or to defend himself, or to appeal from the judgment.
But the present point is not new. It has occurred in a sister State in the case of Mason’s devisees vs. Peters, 1 Munford, 437. It was there held, that a recovery against the executor fora debt due from the testator, is not evidence in an action against the heir or devisee to charge the real estate.
But it is said, that the true meaning of our act of 1781, ch. 11, sec. 2 and 5, in authorizing the heir to contest the pica of fully administered, must have been to confine his defence to that alone, and to exclude any de-fence that went to the merits of the claim or debt, the establishment of which, against the personal representative, is to be considered satisfactory. If this were the true construction of the act, it then would necessarily follow, thata man’s freehold might, unjustly, and by fraud, be taken away from him without his default, and without even the power of redress: for oftentimes an uniust or fraudulent and unfounded demand is capable of being resisted successfully, when the burden of proof lies upon the original establishment of it, but cannot be falsified afterwards by negative proof, as by showing that the judgment was unfounded — that there was no debt, or that the judgment was obtained by collision between the original plaintiff and the executor.
But I take the true meaning of this act to be, not to alter the situation of the heir in this respect, from what it *13 was before the passing thereof. This leads us to take a short view of his liability, and the manner he. was charged before for the lands he had in his hands by descent from his ancestor. At the common law, the lands by descent in the hands of the heir, only were liable when the ancestor had bound the heir in a bond together with himself, for the payment of the debt: he was not liable on any other contract of his ancestor, neither were the lands in his hands — they were not liable for the satisfaction of a judgment against his ancestor. A change in this respect was produced by the statute 13 Ed. 1, ch. 18, and the lands which the heir had in his hands by descent from his ancestor, were affected by that statute, not directly by virtue of his being heir, and having land by descent, but indirectly, by virtue of his being ter-tenant of lands, bound by a judgment obtainéd against his ancestor in his life time, a lien upon which was effected by the elegit execution given by said statute. The elegit binds all lands the party has at the time of the judgment rendered, and the moiety thereof shall be delivered to the plaintiff in the execution, to be held and enjoyed by reasonable appraisement until the debt is satisfied. When the defendant dies before satisfaction of the judgment, as the lands were bound in the hands of the ancestor, so they descended “cum onere” to the heir, and were liable m his hands; and in like manner they were liable into whose hands soever they came — as, for example, in the hands of a purchaser. Upon a scire facias against the heir, to shew cause why execution should not be had of the lands in his hands, it was held that the death of the ancestor did not change the nature of the lien of the judgment, and the moiety was taken in execution. Thus, by this statute, the situation of the heir, with regard to the lands he held by descent, was rendered very different from what it was at common law, when sued on the bond of his ancestor. In the latter case, it was,in some measure and to some purposes, his own debt; he was charged in the debet and detinet, and the whole of the lands descended were taken in execution; he might also plead to *14 the merits, and deny the bond by pleading “non est the turn,” without incurring the penalties of false pleading: for it was not false within his own knowledge, 5 Comyn’s Digest, 595. in the former case he could not plead to the merits of the action, but could only show the judgment was satisfied, or some way discharged.
Thus stood the law before the passing 5 Geo. II, ch. 7; the whole of the lands in the hands of the heir by descent from his ancestor, were liable upon the contract of the ancestor by bond in which the heir was bound; and the moiety of the same in his hands, was liable to the judgment obtained against the ancestor.
We will next notice the statute of Geo. II, ch. 7, and the alterations produced by it, which will the better enable us to discover the true meaning of our act of 1784, ch. 11.
The statute of George says, “the houses, lands, negroes and real estates, belonging to persons indebted, shall be liable and chargeable with all just debts, &c. and may be assets for the satisfaction thereof, in like manner as real estate is liable by the laws of England, to the satisfaction of debts due by bond, or other specialty.” The purport of which I take to be in a few words, that the whole of the real e.stato is liable; not a moiety only, as under a judgment against the ancestor, but the whole, as real estate, by the law of England, is liable to the satisfaction of debts due by bond, or other specialty, where the heir is bound therein.
But suppose it were to have a more enlarged operation, and the construction to be, that all suits might be immediately brought against the heir, which may be brought against the executor, and without first suing and establishing the demand against the executor, (as our act contemplates,) still the heir might contest the justice of the plaintiff’s demand. This statute of Geo. II, enlarged the operation of the statute of Westminster, by making the whole of the lands descended in the hands of the heir liable to the satisfaction of the judgment against the ancestor.
*15 I now come to the statute of 1784, ch. 11. The second section enacts, that in all suits at law where the ex-ccutor shall plead fully administered, no assets, or notsuf-ficient assets to satisfy the plaintiff’s demand, the plaintiff may ascertain his demand and sign judgment; but before taking out execution against the real estate, a scire facias shall issue against the heirs, to show cause why execution shall not issue, áse. This clause evident!}' contemplates a defence by the heir, although it does not state what that defence may be. It seems to me that a de-fence going, to the merits, was not intended to be prohibited, and that the intention of the legislature cannot be restricted to matter arising after the judgment against the executor, to be shown as cause for not issuing the execution against the real estate, as in those cases in the hooks, where the judgment was obtained against the ancestor himself; for where the judgment is obtained against the ancestor, there must be every presumption of correctness — he alone was interested in the suit and had every opportunity of defence. But the case is widely different where there is no judgment against the ancestor, hut the judgment is against the executor: for in the latter case, the ancestor has not admitted the correctness and justice of the demand; it may have been surreptitiously or fraudulently obtained, without a proper de-fence, or even by collusion with the executor; and it would be unreasonable and unjust that the heir should be deprived of his freehold, without the power and opportunity of making such a defence as he could at common law, when charged as heir on the contract of his ancestor by bond.
The 5th section of this act says, that when the executor shall plead fully administered, no assets, or not sufficient to satisfy the plaintiff’s debt, and the issues thereon are found for the executor, still the heir may contest the truth thereof. This section is to a different point from the second section before noticed. The second section went to the plaintiff’s demand, and gave the heir a defence against it. The 5th section regards the personal assets *16 and the executor’s conduct in administering them'.) and is strictly in unison with the common law, the statute of Westminster the second, and the 5th Geo. II, ch. 7, on same point.
The rule of the common law was, that the chattels only should be liable for the debts, and neither the body nor the land should be taken in execution. In the statutes above referred to, the principle of this rule of the common law has always been regarded by them, and the personal estate considered as the natural andproperfund for the payment of debts.
The statute of Westminster 2d, so far altered the common law, that it subjected to execution (to a certain extent) the real estate which was not before liable, except in the hands of the heir, when he was bound by the bond of his ancestor; but it did not exonerate the goods and chattels; — the land subjected was a cumulative remedy given to the judgment creditor; — the liability of the goods and chattels to satisfy debts remained the same. They are to be taken at all events: for the statute says, “all the goods and chattels and a moiety of the lands;” and thereupon all judgments against a defendant, where the plaintiff chose an elegit exepution, the goods and chattels are taken as well as the lands; and indeed, if there are goods and chattels sufficient, the lands ought not to be extended.
The statute 5 Geo. II, ch. 7, equally respects the com mon law principle, that the goods and chattels are the natural fund for the payment of debts, and is in aid of the provisions of the 13 Ed. 1, ch. 18, by adapting them to the circumstances and situation of this country at the time the act was passed, to wit, in 1732.
The provisions therefore, df the 5th section of the act of 1784, vyas exabundanti cautione, to preserve to the heir the principle of the common law, expressly recognized by the statute Westminster 2d, that his freehold should not be taken away but in default of the personalty, and for this purpose he may contest the correctness of the application of the personal assets. This construction is ai- *17 so in conformity with the analogies of the law in other cases, and while it supposes and admits that the whole of the estate of the debtor shall be answerable to the satisfaction of his debts, yet that the personal estate being first liable, shall be first applied; that this is a right given by law to the heir, which he always has enjoyed, which he is not to be deprived of by indirect inference, or doubtful construction, but is to be preserved to him until a clear and unequivocal expression to the contrary is made by the legislature.
My opinion, therefore, is, that the record of recovery against the executor, is not sufficient evidence of the ancestor’s debt against the heir.